UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

---

DAVID R. ZELMER,

    Plaintiff,

-vs-

Michigan Department of Corrections
Probation Officer **KRISTIN M. MERRILL**
in her personal and official capacities, and
Probation Supervisor **AMBER GLENDENING,**
in her personal and official capacities,

    Defendants.

CASE NO: 1:21- cv-_____

HON: _____

---

ANNE L. BUCKLEITNER (P59832)
BARRY R. CONYBEARE (P52056)
NATHANIEL HARRINGTON (P74782)
Conybeare Law Office, P.C.
519 Main Street
St. Joseph, MI 49085
P: 269-983-0561
Email: anne@conybearelaw.com
Email: barry@conybearelaw.com
Email: nate@conybearelaw.com

---

**COMPLAINT**

**NATURE OF THE CASE**

*This is an action under 42 U.S.C. 1983 for the violation of Plaintiff's 14th Amendment due process rights by a Michigan Department of Corrections Probation Officer and her supervisor. Among other things, the probation officers charged and incarcerated Plaintiff using privileged information improperly acquired from and improperly shared by Plaintiff's counselor, a licensed social worker.*

1

# COMPLAINT

Plaintiff, David Zelmer, by and through his counsel, CONYBEARE LAW OFFICE, P.C., states:

### Jurisdiction, Venue and Parties

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, which gives district court's jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

2. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), since all defendants reside in this district and the events giving rise to the claim occurred in this district.

3. At all material times, Plaintiff David Zelmer ("Plaintiff") was a resident of the State of Michigan, County of Berrien.

4. At all material times, Defendant MDOC Probation Officer Kristin M. Merrill ("PO Merrill") worked in the State of Michigan, County of Berrien.

5. At all material times, Defendant MDOC Probation Supervisor Amber Glendening ("Supervisor Glendening") worked in the State of Michigan, County of Berrien.

### Allegations

6. On August 21, 2018, Berrien County Trial Court Judge Scott Schofield sentenced Plaintiff to one year of probation supervised by MDOC Probation Officer "Kristin M. Merrill, 3494."

7. Plaintiff had no prior criminal record. Plaintiff had pled guilty to domestic violence (1st offense), and to attempted resisting and obstructing a police officer, both misdemeanors.

8. Plaintiff had three children who were at the time 15, 19, and 23 years of age, and was struggling with an imminent divorce and suicidal ideation.

9. With regard to mental health, the Court's Order of Probation provided: "You must complete mental health, domestic violence/batterer intervention or other recommended treatment following assessment by a qualified community-based service provider. **Specifically, you shall continue with your current mental health treatment through Beacon Medical Center."** [Bold in original document].

10. PO Merrill's case note for August 21, 2018 states: "…referrals will possibly be given to Melissa Longley ["Counselor Longley"] if P is unable to find a therapist that is covered under his insurance. P will need to address both mental health and anger management with whatever therapist he ends up working with."

11. Also on August 21, 2018, PO Merrill presented to Plaintiff and Plaintiff signed an MDOC release authorizing the MDOC to release the information in Plaintiff's MDOC file to Counselor Longley, a licensed social worker.

12. PO Merrill directed Plaintiff to receive counseling from Longley, giving him no choice.

13. Plaintiff or his health insurance company paid Counselor Longley for each session.

14. Counselor Longley has never been affiliated with Beacon Medical Center.

15. The release of MDOC information to Counselor Longley that Defendant PO Merrill presented to Plaintiff and that he signed was a unilateral release.

16. The release further stated: "Information disclosed pursuant to this authorization is for treatment purposes only. The treatment provider will not release the information to any other person or entity for any reason."

17. Plaintiff did not sign any releases permitting Counselor Longley to release counseling information to the MDOC, or the MDOC to receive information from Counselor Longley regarding Plaintiff.

18. Plaintiff continued with his mental health treatment through Beacon Medical Center, as required in his Order of Probation, and Beacon Medical Center provided status letters to the MDOC throughout his probation.

19. On September 11, 2018, PO Merrill wrote an email to Counselor Longley stating: "I have attached the referral for David Zelmer. I don't have a PSI for him as of yet, but as soon as it is done, I will forward it to you. I do have a couple police reports that I want to send you." She attached a letter on MDOC letterhead dated September 11, 2018 stating that Plaintiff was being referred for general counseling, anger management, and alcohol abuse treatment. The letter also stated, "Verification of attendance, progress and completion is requested to be forwarded to the above listed Probation Agent."

20. Plaintiff's Order of Probation did not specify anger management or alcohol abuse treatment for Plaintiff.

21. Plaintiff began to receive counseling from Counselor Longley on or about September 19, 2018.

22. Counselor Longley also began counseling Plaintiff's children, referring to it as "family reunification," so that she could decide whether to recommend to PO Merrill that a

no contact order imposed by the court between Plaintiff and his young adult children should be lifted.

23. When Plaintiff began to receive counseling with Counselor Longley, PO Merrill solicited privileged information about Plaintiff and his family from Counselor Longley through informal channels.

24. At other times, Counselor Longley appeared to provide privileged information to PO Merrill *sua sponte*.

25. The probation officer and counselor considered themselves a team.

26. Some of the back and forth between PO Merrill and Counselor Longley is preserved in email messages.

27. The messaging acquired to date exceeds the scope of "verification of attendance, progress, and completion of counseling."

28. The messaging includes information gleaned from privileged counseling sessions, including information irrelevant to Plaintiff's probation compliance.

29. Information passed between PO Merrill and Counselor Longley included, but was not limited to, recommendation for and discussion of random drug testing, Counselor Longley's sentencing recommendations for probation violations, unprofessional references to Plaintiff and his friends, family, and counsel, and information about Plaintiff's divorce, asset allocation, and parenting.

30. Plaintiff had authorized Counselor Longley to talk about this case with his own attorneys.

31. When Plaintiff's counsel exchanged communications with Counselor Longley, she routinely "blind copied" PO Merrill on the correspondence, and PO Merrill routinely pasted those communications into her MDOC "case notes."

32. Counselor Longley had directed Plaintiff not to date anyone.

33. Counselor Longley became upset when she learned during an April 10, 2019 counseling session that Plaintiff had established a new live-in dating relationship with a woman.

34. Counselor Longley deemed Plaintiff's new relationship to be a failure to comply with her treatment plan.

35. Counselor Longley also asserted that Plaintiff had hugged her at the close of the April 10th treatment session while saying, "I trust you," and that the hug was an assault.

36. Counselor Longley and PO Merrill decided to conduct a joint mandatory session with Plaintiff on April 18, 2019, to discuss whether or not he would be formally charged with probation violations for his alleged failure to comply with Counselor Longley's treatment plan, and for assault.

37. Plaintiff told his attorneys about PO Merrill's and Counselor Longley's planned meeting.

38. Counselor Longley and PO Merrill told Plaintiff and his attorneys that the meeting was going to be a "therapeutic session."

39. Plaintiff's attorneys concluded that a meeting with his probation officer could not logically be therapeutic because the probation officer's presence would breach all confidentiality and privilege attached to mental health counseling pursuant to MCL 333.18513.

40. Plaintiff's attorneys concluded that if such a meeting were to be conducted, they should be present to advise Plaintiff.

41. Plaintiff's defense counsel told PO Merrill and Counselor Longley that they would attend the meeting planned for April 18, 2019, with Plaintiff.

42. PO Merrill and Counselor Longley were opposed to Plaintiff having legal representation at their meeting.

43. Plaintiff's counsel attempted to explain the impropriety of the planned joint meeting to Counselor Longley and PO Merrill, and why it was appropriate for Plaintiff to have counsel at such a meeting.

44. PO Merrill responded to Plaintiff's attorney: "I am unclear how his session [planned for] this evening could not be considered therapeutic because of my attendance;" I have never had a probationer request counsel in a situation like this," and; "If I am mistaken or misinformed could you please forward me the legal documentation stating that he does have a right to counsel."

45. Plaintiff's counsel pointed out that PO Merrill had mandated Plaintiff's attendance at the supposedly therapeutic meeting, and referred both PO Merrill and Counselor Longley to MCL 333.18513, with its provisions mandating "Confidentiality of Communication" for mental health counseling.

46. When Plaintiff's counsel continued to insist that Plaintiff have legal representation at the planned April 18, 2019 meeting, PO Merrill and Counselor Longley cancelled the meeting a few hours before it was to take place.

47. PO Merrill summoned Plaintiff to her office the evening of April 18, 2019, and arrested and detained him, telling him, "You can thank your lawyers."

7

48. Plaintiff was ultimately charged with two probation violations (failure to comply with a treatment plan and assault) and was incarcerated from April 18-22, and April 30-May 9, 2019, while the probation violations were being adjudicated.

49. While these matters were being adjudicated, PO Merrill solicited and incorporated input from Counselor Longley for the Probation Violation sentencing recommendation to Berrien County Trial Judge Sterling Schrock.

50. PO Merrill recommended that the court revoke Plaintiff's probation and that he be incarcerated for 180 days with credit for 10 days served.

51. PO Merrill's supervisor, PO Amber Glendening, reviewed and approved the sentencing recommendation, making edits that included deleting Counselor Longley's name from the report.

52. PO Merrill indicated to the court in her Probation Violation Report dated July 31, 2019 that the decision to charge Plaintiff with a probation violation was made after discussion with her supervisor.

53. On July 23, 2019, the Berrien County Assistant Prosecutor assigned to the case and Plaintiff's criminal defense counsel submitted a joint stipulation stating that the court file contained privileged material provided by Counselor Longley.

54. The stipulation also agreed that privileged material should be stricken from the court file and from the probation office's file.

55. On July 31, 2019, Judge Schrock found that, based upon the stipulation, privileged material had been interjected into the Plaintiff's court file and case, and that "in large measure this probation violation appears to be the result of interaction between a …licensed counselor and Mr. Zelmer."

56. Judge Schrock dismissed the probation violation charge premised upon Plaintiff's "failure to comply with a treatment plan," noting that the Court's Probation Order had never ordered Plaintiff to receive counseling from Longley, and further, that neither PO Merrill nor Counselor Longley had been able to produce any treatment plan.

57. Judge Schrock also accepted Plaintiff's plea of no contest to the charge of assault, sentencing him to time served, and closed the case, thus releasing Plaintiff from MDOC supervision.

58. On August 12, 2019, Counselor Longley retained counsel and unsuccessfully moved the court to set aside the stipulation entered on July 23, 2019.

59. Counselor Longley asserted, among other things, that what she had done could not be wrong because she had done the same [provided counseling information to probation officers] "in hundreds of other Berrien County Trial Court cases preceding Defendant Zelmer's case."

### I. Deprivation of Due Process Under the Fourteenth Amendment, 42 USC §1983 (Defendants PO Merrill and Supervisor Glendening in Their Official and Personal Capacities)

60. Plaintiff hereby reasserts and realleges each and every allegation contained in paragraphs 1-59 as more fully set forth herein.

61. Defendants were each "state actors" working for the Michigan Department of Corrections (MDOC).

62. Defendants were each acting under "color of law" when PO Merrill supervised Plaintiff's period of probation.

63. Defendants' conduct deprived the Plaintiff of his due process rights guaranteed under the 14th Amendment to the U.S. Constitution.

64. Defendant PO Merrill violated Plaintiff's due process rights by:

    a. Failing to execute the court's Order of Probation as written and unilaterally changing treatment providers and the scope of treatment as she saw fit;

    b. Soliciting and accepting privileged health information for which no release had been executed;

    c. Using improperly acquired and non-competent privileged communications to arrest and incarcerate plaintiff, and to formulate unfounded criminal charges;

    d. Forcing Plaintiff to choose between abandoning his statutory right to confidential and privileged mental health care communications (MCL 333.18513) and incarceration and criminal charges;

    e. Engaging in a custom and practice of obtaining and exchanging privileged information without authority;

    f. Committing other acts and omissions that may become known through the course of discovery.

65. Defendant supervisor Glendening violated Plaintiff's due process rights by:

    a. Permitting her supervisee to execute the court's Order of Probation in a way other than as written, and to unilaterally change treatment providers and the scope of treatment to be provided;

    b. Condoning her supervisee's use of privileged and non-competent evidence in reports to the court.

    c. Participating in constitutional violations by participating in the decision to charge Plaintiff with probation violations based on improperly obtained, privileged information;

    d. Participating in constitutional violations by reviewing and approving Plaintiff's sentencing recommendation and making edits that included deleting Counselor Longley's name from the report.

    e. Allowing her supervisee to force a probationer to choose between abandoning his statutory right to confidential and privileged mental health communications (MCL 333.18513) and incarceration and criminal charges;

    f. Failing to train, supervise, and control her subordinate;

    g. Participating in and failing to remedy a constitutional violation after learning of it;

    h. Creating or following a policy or custom under which constitutional violations occurred;

    i. Failing to act on information that constitutional rights were being violated; and

    j. Committing other acts and omissions that may become known through the course of discovery.

66. Defendant PO Merrill and her MDOC supervisor knew or should have known that supervision of offenders must be done in a way that preserves offenders' rights under the United States Constitution.

67. Defendants' actions were not of a judicial nature.

68. Defendants' improper use of privileged and non-competent evidence was the product of a policy or custom of the MDOC.

69. Defendants' actions and inactions were the direct and proximate cause of damage to Plaintiff, including significant physical and emotional distress, disruption to his life; and disruption to his family system and parenting. As a direct and proximate cause of Defendants' actions, Plaintiff was incarcerated for 15 days, if not more, and convicted of at least one Probation Violation, and incurred substantial legal expenses.

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendant PO Merrill and Defendant Supervisor Glendening in their personal and official capacities as follows:

1. Compensatory damages for Plaintiff's psychological and emotional distress and damages, and his out-of-pocket expenses incurred in responding to defendants' actions;

2. Punitive damages;

3. Statutory interest;

4. Costs;

5. Reasonable attorney fees; and

6. Injunctive relief requiring the defendants to take effective steps to train and be trained to:

    (a)    Execute Orders of Probation as written;

    (b)    Interact with community mental health providers consistent with confidentiality and privilege;

    (c)    Ensure that appropriate releases of information are in place when acquiring and releasing mental health information; and

    (d)    Generate probation violations premised upon only non-privileged, competent information.

DATE: October 29, 2021                      CONYBEARE LAW OFFICE, P.C.

                                          BY:    /s/Anne L. Buckleitner
                                                    Anne L. Buckleitner (P59832)
                                                    Barry Conybeare (P52056)
                                                    Nate Harrington (P74782)
                                                    Attorneys for Plaintiff
                                                    519 Main Street
                                                    St. Joseph, MI 49085
                                                    P: 269-983-0561
                                                    Email: Anne@conybearelaw.com